UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER ALLEN, | CASE NO. CV F 13-1527 LJO SMS |
| Plaintiff, | **ORDER TO DISMISS ACTION AND JUDGMENT THEREON** (Doc. 5.) |
| vs. | |
| U.S. BANK, NATIONAL ASSOCIATION, | |
| Defendant. | |

## PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

## INTRODUCTION

Defendant U.S. Bank, National Association ("US Bank") seeks to dismiss as legally barred and insufficiently pled plaintiff Peter Allen ("Mr. Allen's") claims arising from his loan default, initiation of foreclosure on Mr. Allen's Fresno property ("property"), and failure to

1

modify his loan. This Court construes Mr. Allen's action as an attempt to thwart, delay and complicate foreclosure of the property. For the reasons discussed below, this Court DISMISSES this action given the absence of merit of Mr. Allen's claims and VACATES the November 12, 2013 hearing set by US Bank.

### Mr. Allen's Property Loan And Foreclosure

On December 16, 2004, Mr. Allen obtained a $232,000 property refinance loan from Downey Savings and Loan Association, F.A. ("Downey Savings"). The loan is secured by a deed of trust ("DOT"), which Mr. Allen and his wife executed and which was recorded on December 22, 2004.[1] The DOT names Downey Savings as lender and DSL Service Company ("DSL Service") as trustee. The DOT provides for non-judicial foreclosure upon loan default.

On November 21, 2008, US Bank acquired certain Downey Savings assets from the Federal Deposit Insurance Corporation, which acted as Downey Savings receiver.

On September 28, 2012 after Mr. Allen's loan default, a notice of default and election to sell under deed of trust was recorded to initiate property foreclosure. On August 1, 2013, a substitution of trustee was recorded to substitute Old Republic Default Management Services as DOT trustee in place of DSL Service. Also on August 1, 2013, a notice of trustee's sale was recorded for the property. The foreclosure sale has not occurred.

### Mr. Allen's Claims

On August 19, 2013, Mr. Allen filed his Complaint ("complaint") to challenge property foreclosure and to claim that US Bank lacks authority to foreclose. The complaint alleges quiet title, declaratory relief, contract and federal statutory claims which will be discussed below.

### DISCUSSION

### Sua Sponte Dismissal

The complaint fails to allege actionable claims to warrant dismissal of this action.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such

---

[1]      Documents pertaining to the loan were recorded with the Fresno County Recorder.

2

dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings*

*Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory.

### Failure To Satisfy F.R.Civ.P. 8

The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim

5

plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8. The complaint lacks facts of US Bank's specific wrongdoing to provide fair notice as to what it is to defend. The complaint lacks cognizable claims or legal theories upon which to support US Bank's liability and rests on overbroad conclusions that US Bank lacks authority to foreclose on the property. The complaint lacks specific, clearly defined allegations of US Bank's alleged wrongs to give fair notice of claims plainly and succinctly to warrant dismissal of this action. The complaint asserts frivolous notions, including:

1.   The "true lender was a national bank" which "unlawfully lent its credit indirectly through the front-man 'lender' Downey Savings";

2.   "No default had occurred in the obligations for which any Deed of Trust encumbering the Property is security"; and

3.   "The issue of the enforcement of this deed of trust is now no longer non-judicial."

Moreover, the complaint's claims are subject to defenses and are based on legally deficient theories to further warrant dismissal.

/ / /

6

**Quiet Title**

The complaint's (first) quiet title claim "seeks to quiet title to the Property against the claims of Defendants" who "have no right to title or interest in the Property."

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1. A legal description and street address of the subject real property;

2. The title of plaintiff as to which determination is sought and the basis of the title;

3. The adverse claims to the title of the plaintiff against which a determination is sought;

4. The date as of which the determination is sought; and

5. A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

The unverified complaint lacks facts as to the title of which Mr. Allen seeks determination and the basis of Mr. Allen's purported title given his loan default and inability to tender amounts due on his loan. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that Mr. Allen is the property's rightful owner, has satisfied DOT obligations and thus lacks a properly pled quiet title claim.

Moreover, a purported quiet title claim is doomed in the absence of a tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673

7

(1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt. The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Mr. Allen is unable to quiet title in his favor without paying or tendering his outstanding indebtedness. With the complaint's absence of a legitimate ability or willingness to tender the indebtedness, a purported quiet title claim fails. This Court is not in a position to award Mr. Allen a windfall. The quiet title claim is subject to dismissal.

### Fair Debt Collection

The complaint's second claim accuses US Bank of violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq., by its "unfair or unconscionable means to collect or attempt to collect any debt."

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985). The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. 1962a(6)(F).

"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry*, 756 F.2d at 1208; *see F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 172 (3rd Cir. 2007) ("an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of assignment").

The complaint fails to substantiate US Bank's status as a debt collector in absence of facts that US Bank acquired Mr. Allen's debt after default. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996); *Kloth v. Citibank (South Dakota), N.A.*, 33 F.Supp.2d 115, 1998 (D. Conn. 1998) ("Generally, the FDCPA does not apply to creditors."). The complaint lacks a valid FDCPA claim and facts that US Bank engaged in conduct prohibited by the FDCPA, especially given that US Bank is a creditor, not a debt collector.

Moreover, as a fellow district judge explained, "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA":

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.
>
> . . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (actions "in pursuit of the actual foreclosure may not be challenged as FDCPA violations").

The complaint's limited meaningful allegations address foreclosure, not debt collection activities subject to the FDCPA. In the absence of facts of actionable debt collection, the FDCPA claim is subject to dismissal.

### Declaratory Relief

The complaint's (third) declaratory relief claim seeks declarations that "Defendant is not the owner or holder of any Note encumbering the Property; that Defendant has no secured interest in Plaintiff's property," and "Defendant are [sic] not protected by Holder in Due Course

9

Doctrine."

The declaratory relief claim is subject to dismissal as a remedy, not a separate claim, and in the absence of a viable claim to support declaratory relief.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984). A declaratory relief claim operates "prospectively," not to redress past wrongs. *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The

controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). As an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The complaint seeks to redress past alleged wrongs in connection with foreclosure and thus relief not subject to the DJA. The complaint fails to support a declaratory relief claim given dismissal of other claims. The complaint fails to substantiate an independent claim for declaratory relief, and such claim is subject to dismissal.

## **RICO**[2]

The complaint's (fourth) RICO claim accuses US Bank of "a pattern and practice of mailing false foreclosure letters (Notice of Default, Notice of Trustee Sale, etc.) to targeted homeowners and rental property owners, even though Defendant is not the owner or holder of any Note encumbering their properties." The complaint lacks facts to support RICO elements.

### *Elements*

RICO, more particularly, subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a

---

[2] RICO refers to the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).  A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

### *Enterprise*

Section 1962(c) requires "that the person named as the defendant cannot also be the entity identified as the enterprise." *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989).  For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a corporation or an "association in fact" of individuals.  18 U.S.C. § 1961(4).  The U.S. Supreme Court has explained:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

An "association-in-fact enterprise" requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946, 129 S.Ct. 2237 (2009).  An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524.  Moreover, an "'enterprise' must have some longevity, since the offense proscribed by [section 1962(c)] demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'" *Boyle*, 556 U.S. at 946, 129 S.Ct. 2237.  An "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948, 129 S.Ct. 2237.

"[T]o avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations, which establish the existence of an enterprise." *Elliot v.*

*Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

The complaint lacks facts to identify an enterprise under RICO. There are no facts that an alleged association-in-fact was an ongoing organization whose members functioned as a continuing unit. The complaint fails to allege facts to show an alleged enterprise's purpose, the relationship of those associated with an enterprise. or continuity of an ongoing activity to establish an enterprise. The complaint appears to allege "[t]he individual homeowner" as the enterprise. Such allegation makes no sense. "Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170, 184, 113 S.Ct. 1163 (1993).

### *Pattern Of Racketeering Activity*

"Racketeering activity" is any act indictable under several provisions of Title 18 of the United States Code. *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. § 1961. "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to require "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Section 1961"does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989). Section 1961(5) "says of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed." *H.J., Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

"Section 1961(5) concerns only the minimum *number* of predicates necessary to

establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original). The term pattern requires a relationship between predicates and the threat of continuing activity. *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. The factor of continuity plus relationship combines to produce a pattern. *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900.

A pattern is not formed by "sporadic activity." *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900. A RICO violation requires "continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H. J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. RICO addresses "long-term criminal conduct." *H. J., Inc.*, 492 U.S. at 242, 109 S.Ct. 2893.

The complaint lacks facts to establish an enterprise's conduct of a pattern of racketeering activities, especially given the absence of a factual basis for state or federal crimes to constitute the necessary predicate acts within the definition of racketeering activity. There are no allegations that US Bank or others engaged in an enterprise or two or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962. Nothing suggests a continuing threat of long-term racketeering activity to establish a pattern, especially given the absence of specific dates. The complaint's mere reference to mail fraud is unavailing.

### *Damages*

The complaint further fails to satisfy the damages requirement for a RICO claim. The "plain language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

A purported RICO claim is vitiated by the absence of sufficient facts of an enterprise, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint

alleges no injury to Mr. Allen's business or property by a racketeering activity or a sufficiently alleged violation identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962. The RICO claim is subject to dismissal.

### *Pleading Specificity*

The RICO claim is further subject to dismissal given the complaint's failure to satisfy F.R.Civ.P. 9(b) pleading requirements with the complaint's absence of facts to support RICO elements.

The Ninth Circuit applies F.R.Civ.P. 9(b) particularity requirements to RICO claims under section 1962. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded. This is a fatal defect under Fed.R.Civ.P. 9(b), which requires that circumstances constituting fraud be stated with particularity."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.")

"The mere assertion of a RICO claim consequently has an almost inevitable stigmatizing effect on those named as defendants. In fairness to innocent parties, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). A RICO complaint must be presented with intelligibility sufficient "for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Old Time Enter., Inc. v. International Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir.1989). A RICO claim "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of that understanding." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

"The particularity requirements of Rule 9(b) apply to allegations of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, when used as predicate acts for a RICO claim." *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).

As discussed above, the absence of facts to support RICO elements illustrates the

15

complaint's failure to satisfy F.R.Civ.P. 9(b) to further warrant dismissal of the RICO claim.

### Implied Covenant Of Good Faith And Fair Dealing

The complaint's (fifth) claim appears to proceed under the theory of breach of the implied covenant of good faith and fair dealing ("implied covenant"). The implied covenant claim references a Consent Order between US Bank and the U.S. Department of Treasury Comptroller of Currency and appears to take issue with US Bank's failure to modify Mr. Allen's loan. The implied covenant claim alleges that Mr. Allen's "application for loan modification was not handled properly" and accuses US Bank of "unlawful, unsafe and unsound practices in the servicing of the Plaintiff's home mortgage loan and its foreclosure processes."

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The covenant of good faith and fair dealing is implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed." *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1147, 271 Cal.Rptr. 246 (1990).

"The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031, 14 Cal.Rptr.2d 335 (1992). "There is no obligation to deal fairly or in good faith absent an existing contract." *Racine & Laramie*, 11 Cal.App.4th at 1032, 14 Cal.Rptr.2d 335. The "implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza*, LLC, 159 Cal.App.4th 784, 799, 71 Cal.Rptr.3d 885 (2008).

An implied covenant claim "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted). The "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992). "California observes 'the traditional rule that a covenant of good faith and fair dealing will not be implied to vary the express unambiguous terms of a contract.'" *Ford v. Manufacturers Hanover Mortg. Corp.*, 831 F.2d 1520, 1524 (9th Cir. 1987) (quoting *Milstein v. Security Pac. Nat'l Bank*, 27 Cal.App.3d 482, 487, 103 Cal.Rptr. at 19 (1972)).

"[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)). Moreover, although the implied covenant particularly applies when a party has discretionary power affecting rights of another party, "the implied covenant does not trump an agreement's express language." *Steiner v. Thexton*, 48 Cal.4th 411, 419-420, 226 P.3d 359 (2010).

The complaint lacks a specific contractual obligation on which to premise an implied covenant claim. The complaint points to neither a DOT provision nor contract term which US Bank violated. In the absence of a tangible breach of contract claim, the complaint lacks facts to demonstrate US Bank's failure or refusal to discharge contractual responsibilities, prompted by a conscious and deliberate act. The implied covenant claim improperly seeks to impose on US Bank obligations beyond the scope of a purported agreement to modify Mr. Allen's loan or to forego foreclosure. The DOT permits foreclosure and thus no implied covenant prohibited initiating foreclosure or doing that which the DOT permitted to remedy Mr. Allen's default. The implied covenant claim is subject to dismissal.

Moreover, the implied covenant claim fails to the extent it relies on a third-party

17

beneficiary theory based on a contract with the federal government.

Under federal common law only an intended beneficiary may enforce a contract as a third-party beneficiary:

> **[B]efore a third party can recover under a contract, it must show that the contract was made for its direct benefit – that it is an *intended beneficiary* of the contract.** A promisor owes a duty of performance to any intended beneficiary of the promise, and the intended beneficiary may enforce the duty by suing as a third party beneficiary of the contract, whereas an incidental beneficiary acquires no right against the promisor.

*County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009) (internal quotation marks, brackets and citations omitted, emphases in *Astra*).

In *Astra*, 588 F.3d at 1244, the Ninth Circuit further explained:

> To qualify as an intended beneficiary, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. Although intended beneficiaries need not be specifically or individually identified in the contract, they still must fall within a class clearly intended by the parties to benefit from the contract.

Demonstrating third-party beneficiary status in a government contract situation is particularly difficult: "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary." *Astra*, 588 F.3d at 1244 (internal quotation marks and citations omitted, emphasis in original).

The Ninth Circuit further explained clearing the "clear intent" hurdle:

> This "clear intent" hurdle is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind.

*Astra*, 588 F.3d at 1244.

The complaint offers no facts to support Mr. Allen's status as a third-party beneficiary under any contract between US Bank and the federal government.

**Attempt At Amendment And Malice**

Since the complaint lacks viable claims, Mr. Allen is unable to cure claims by allegation of other facts and thus is not granted an attempt to amend. No further facts are apparent to attempt to support his claims. Mr. Allen's complaint raises frivolous points, all of which this Court need not address individually. *See Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.")

Moreover, this Court surmises that Mr. Allen brought this action in absence of good faith and seeks to exploit the court system solely for delay or to vex US Bank and the foreclosure process. The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). The complaint comprises invalid claims. An attempt to vex or delay provides further grounds to dismiss this action.

**CONCLUSION, ORDER AND JUDGMENT**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action and all claims;

2. ENTERS this JUDGMENT in favor of defendant U.S. Bank National Association and against plaintiff Peter Allen; and

3. DIRECTS the clerk to close this action.

/ / /
/ / /
/ / /
/ / /
/ / /

This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this JUDGMENT.

IT IS SO ORDERED.

Dated:  **October 10, 2013**                    **/s/ Lawrence J. O'Neill**
                                                           UNITED STATES DISTRICT JUDGE